(No. 20868.—

BENJAMIN D. COHEN *et al.* Appellants, *vs.* HARRY SORG *et al.* Appellees.

*Opinion filed October 23, 1931.*

MAXIMILIAN J. ST. GEORGE, for appellants.

BENJAMIN C. BACHRACH, (BACHRACH & ABT, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

This appeal brings before us for review an order of the circuit court of Cook county overruling objections to a master's report of sale under a decree of sale in a partition suit. The property involved was lot 195 in Britigan's Westwood, being a subdivision of the east half of the southeast quarter of section 24, township 38 north, range 13 east of the third principal meridian, in Chicago. The complainants were Benjamin D. Cohen and his wife, Bessie, who were found by the decree of partition to be the owners in joint tenancy of half the lot and Louis H. Dembo the owner of fifteen hundredths, the remaining thirty-five hundredths being owned by Benjamin Sorg, the defendant. The whole lot was subject to a mortgage for $42,500 originally, on which $36,000 was still due, and the Cohens' half was subject to a second mortgage for $12,500 originally, on which $6450 was still due. The commissioners reported that partition could not be made without manifest prejudice to the rights of the parties and appraised the lot at $72,000, and thereupon the court entered a decree of sale in one parcel for cash. No report of sale appears to have been filed until February 19, 1931, though on February 11 an order was entered continuing to Friday, February 13, the hearing on the petition to have the master's report of sale approved. On February 13 the hearing on the motion was continued to February 14. On February 19 the master's report of sale was filed, showing that the sale was made on January 12; that prior to offer-

ing the lot for sale the parties by their solicitors submitted a stipulation in writing in which it was agreed, in substance, that the lot should be offered for sale subject to the lien of the trust deed for $42,500, on which there remained due an unpaid balance of principal of $36,000, and that the unpaid balance of the principal be credited upon the purchase price of any bid which might be received by the master, and that he receive at the time of the sale ten per cent of the amount of the bid after deducting the principal sum of $36,000; that Sorg bid for the premises $60,100 subject to the provisions of the stipulation, and that being the highest and best bid and being two-thirds of the valuation put upon the premises by the commissioners, the master accordingly then and there struck off and sold the real estate and premises to Sorg for that sum of money; that Sorg paid to him the sum of $2410, being ten per cent of the purchase price after deducting the amount of the incumbrance, $36,000.

The record contains an order entered on February 19 which recites that on motion of the master in chancery the matter came on to be heard on the master's report of sale, upon the objections of Louis Dembo, Benjamin Cohen and Bessie Cohen filed therein to the report, although no objections appear to have been filed; that the court considered the report and the objections thereto and heard the arguments of counsel with respect thereto, and found that the master proceeded in every respect in due form of law and in accordance with the terms of the decree and that the sale was fairly made, and the court overruled the objections.

On February 21, 1931, an order was entered reciting that on motion of the complainants, M. J. St. George also appearing for them, the court finds that by inadvertence leave was not granted the complainants to file exceptions to the master's report of sale on February 19, 1931, and orders that leave be granted them to file such exceptions *nunc pro tunc* as of February 19, 1931, and the complain-

ants then duly excepted to the entry of the order of February 19, 1931, overruling their exceptions and confirming the sale and prayed an appeal, which was allowed, and thirty days were given the complainants within which to file a certificate of evidence. A certificate of evidence was filed on March 4, 1931, which states that on February 11, 1931, Henry A. Blouin, representing Benjamin C. Bachrach, solicitor for the defendant Sorg, presented for confirmation the master's report of sale, and the complainant Cohen objected orally to the confirmation of the sale and in substance stated to the court that at the sale on January 12, 1931, he, although present and ready and willing to bid, was prevented from bidding by the master, Ninian H. Welch, and that he wished for an opportunity to bid upon the property. Thereupon the court stated, in substance, that if the complainants were prepared to present a bid for $5000 in excess of the sum for which the property had been sold on January 12 the court might entertain the motion to open up the bidding, and the further consideration of the matter was continued to February 12 and then to February 14; that on February 14 David Ratner, solicitor for the complainants, together with the complainants Cohen and Dembo, and Benjamin C. Bachrach, solicitor for the defendant Sorg, and Sorg, appeared before the judge; that Bachrach in substance stated to the court that he was not in court on February 11, when the motion for confirmation of the sale by the master was presented by Blouin; that prior to that time he had not heard of any objection to the confirmation of the report of sale by the master; that he had been informed that the claim was made that Cohen and Dembo were prevented by the master from bidding at the sale on January 12; that he was present at the sale held at the Chicago Real Estate Board room, and that there were present Ratner, solicitor for Cohen and Dembo, and a man by the name of Paul Coconas; that promptly at 1:00 o'clock P. M. the master submitted the property for sale; that

Sorg was not present, and as soon as the property was offered for sale by the master, Ratner in a loud tone of voice bid $48,000, and stated that the amount was two-thirds of the appraised value of the property; that at the time of making the bid Sorg had not yet arrived, and shortly thereafter Blouin arrived and stated Sorg was on his way, and almost immediately Sorg arrived and was informed of the offer made; that Sorg thereupon bid a larger amount than $48,000, whereupon Ratner, in the presence of Cohen and Dembo and all the other persons mentioned, obtained permission from the master to withdraw to an adjacent room for consultation; that after such consultation they returned to the room where the sale was conducted, and Ratner, in the presence and hearing of Cohen and Dembo, bid a larger amount than Sorg's bid; that the same program was repeated not less than six times; that Ratner bid on behalf of the complainants until he reached $58,000; that Sorg then bid an amount more than $58,000, whereupon another conference was held by Ratner, Cohen, Dembo and Coconas, and upon return to the room where the sale was conducted Coconas bid $60,000, and thereupon Ratner, in the presence and hearing of Dembo and Cohen, stated to the master, after conference and consultation in the adjacent room, "We are through;" that thereupon the master stated that the property had been sold to Sorg; that after the sale Bachrach asked Ratner if he had truthfully stated what occurred at the sale conducted by the master, and Ratner replied that he had. Thereupon Ratner stated that his clients, Cohen and Dembo, were dissatisfied with him, and that he (Ratner) was sure that the sale had been conducted properly by the master and that there had been no prevention of any bidding by any of the complainants by the master. Thereupon, when Dembo began speaking to the court, the judge asked him if he was dissatisfied with his counsel, and he replied that he was not. Thereupon Ratner stated that although he had no criticism to make

of the action of the master, he thought it his duty, as solicitor for Cohen and Dembo, to state to the court that Sorg had visited him in his office and stated that he would pay his fees; that Sorg was profane in his language; that Ratner had been informed that Sorg had done everything possible to prevent the successful renting of the vacant space in the building; that he (Sorg) had chased out a prospective tenant, who had received a lease from Cohen, at the point of a gun, and that it was necessary for Cohen to pay money to a lawyer for the cancellation of the lease. No objections other than these statements were presented by any of the complainants to the confirmation of the master's report of sale, and the court ruled that the motion for confirmation of sale would have been granted on February 11 were it not for the charge made by Cohen that the master, Welch, had wrongfully prevented the complainants, or some of them, from bidding for the property at the sale on January 12; that inasmuch as everyone present agreed that the complainants were not prevented from bidding at such sale, the court ruled that the motion for confirmation of sale by the master be affirmed. Thereupon all counsel and the parties withdrew from the court room to prepare an order of confirmation of sale, and the parties returned to the court on February 19, at which time the following proceedings occurred:

Ratner stated that at the request of complainants he prepared exceptions to the master's report of sale and exhibited the exceptions to the court; that Cohen and Dembo had retained other counsel to represent them, and that such counsel's name was Maximilian J. St. George; that Ratner was informed that Cohen and Dembo signed an affidavit charging him with preventing Cohen and Dembo from bidding at the sale; that he deemed it his duty to state to the court that prior to the sale on January 12 he had been informed by his clients, Cohen and Dembo, that they. had arranged to have the bidding conducted in their behalf by

Paul Coconas; that their plan was to have for deposit a rubber check; that if the bidding reached a point where the property would be sold to Cohen and Dembo through Coconas at a price higher than they wished to purchase the property or were able to pay, then they and Coconas would abandon the entire proceeding without loss of any kind; that Ratner thereupon stated to them that he would not be a party to such a proceeding; that such conduct would be contemptuous; that he would conduct the bidding, and that he did conduct the bidding until he made the bid of $58,000; that the bid having been overtaken by a bid by Sorg, Coconas, after a conference with the complainants and Ratner, against the advice of Ratner made what Bachrach designated as a "jump bid" for $60,000; that Ratner had advised his clients against participation in such a bid because they had reached the limit to which they could go financially in payment for the property; that no other objections of any kind to the confirmation of the report of sale by the master were made by any of the complainants prior to February 19, 1921, and that the report of sale was filed with the clerk of the court on February 19, 1931.

The master's report of sale was not filed within ten days after the sale, as required by section 29 of the Partition act. The sale was not invalidated by this neglect of the master. The parties to the partition, the owners of the land involved and the purchaser or purchasers at the sale all have interests, of which they cannot be deprived by the failure, whether negligent or willful, of the officer making the sale to file the report of it which the law requires him to make. It is the policy of the law to give permanency and stability to judicial sales and to the purchaser the benefit of his bid. This sale was made on January 12. The appellants and their counsel were present and participated in the proceedings from the beginning to the end. They were acquainted with all that took place. They knew the master's report was due in ten days from the sale, and, if

it was not filed within that time, upon its expiration they could have applied to the court and have compelled it to be filed. It is true that on February 11 the report does not appear to have been filed, but on that day the certificate of evidence shows that it was presented to the court with a motion for its approval. One of the appellants was present in person, and on February 14, the date to which the cause was continued, counsel for the complainants were present. No exceptions in writing to the report had been filed, and none was filed until after the objections to the sale had been argued and decided. The report was present, the parties were present, counsel were present, and it seemed to be taken for granted that the report was before the court for appropriate action. The only objection made was that of the appellant Benjamin Cohen that he was present at the sale, ready and willing to bid, but was prevented from bidding by the master conducting the sale and that he wished for an opportunity to bid. The court stated that if the complainants were prepared to present a bid for $5000 in excess of the sum for which it had been sold the court might entertain a motion to open up the bidding, and the cause was continued to February 12. Neither then nor at any later hearing was an offer made to guarantee an increased bid. No evidence was heard at any time. Statements of counsel and of the complainants were made which were probably regarded as evidence, but there was nothing tending to show any act or word of the master or anyone else tending to prevent the complainants from bidding, except the statement to them of their counsel that they were bidding beyond their ability. The certificate of evidence states that no other objections of any kind to the confirmation of the report of sale were made by any of the complainants prior to February 19, when the order of confirmation was made.

On February 21 an order was entered permitting the complainants to file written objections to the master's re-

port of sale *nunc pro tunc* as of February 19, 1931. The objections thereupon filed on February 21, 1931, were, in substance, that the premises were appraised by the commissioners at less than their fair cash value; that the sum of $60,100 was a grossly inadequate price for the premises; that the complainants are informed and believe that if a re-sale is ordered the premises will bring a sum largely in excess of the appraisal, and they offer and agree, in case of re-sale, to bid $65,000; that the defendant Sorg, during the pendency of the partition suit, lived in the premises and willfully hampered and prevented the receiver or the complainants from renting certain portions of the premises, to-wit, a store and several offices and flats, and intentionally accepted a smaller rental than certain tenants had theretofore paid for the premises, all with the intention of decreasing the value of the premises for any prospective bidder; and that the complainants, by virtue of the position occupied by Sorg as a resident in the premises and by virtue of the fact that he is a man given to violent acts and by virtue of the fact that he threatened the lives of the complainants and did on one occasion forcibly eject one of the tenants from the premises by the use of a revolver, succeeded in minimizing the value of the premises so that any third person, as well as the complainants, could not make a proper bid thereon.

None of these questions were presented to the court on the hearing upon the exceptions to the report of sale and none of them were passed on by the trial court or presented to the trial court. They simply were an attempt to present new issues after the case had been decided. The exceptions to the master's report of sale were without merit and the order of the circuit court overruling them and confirming the sale was correct. The appeal was from the order of February 19 and does not bring before us for review any action of the court subsequent to that date. The order is affirmed.

*Order affirmed.*